UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

JOHN DOE,

                Plaintiff,

   v.

TRUSTEES OF DARTMOUTH COLLEGE,

                Defendant.

Civil Action No. 19-cv-000013-JL

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION

Plaintiff John Doe, by and through his attorneys, Shaheen & Gordon, P.A., respectfully offers this Memorandum of Law in Support of his Motion for Expedited Consideration.

**I.   Background**

On January 7, 2019, John filed a Verified Complaint (Doc. 1) against the Trustees of Dartmouth College ("Dartmouth"), bringing claims for Violation of Title IX, Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Negligence related to Dartmouth's unfair and procedurally-deficient investigation of an allegation that John sexually assaulted another student, which culminated in a finding against John and his expulsion from Dartmouth following the conclusion of the Fall 2018 Term.

John also filed his Motion for Preliminary Injunction ("PI Motion") (Doc. 4) and supporting Memorandum of Law ("Memo") (Doc. 4-1) contemporaneously with his Verified Complaint, seeking to enjoin his expulsion pending a decision from Dartmouth on John's appeal of its expulsion, or, if Dartmouth denies his appeal, pending the outcome of this case.  In the

interest of not burdening the Court with additional filings, John incorporates by reference his Memo and the arguments presented therein.

On January 10, 2019, John filed a Motion for Temporary Restraining Order ("TRO Motion") (Doc. 13). The TRO Motion was denied on January 11, 2019 after a hearing. John incorporates by reference his TRO Motion and the arguments presented therein.

On January 24, 2019, the PI Motion was denied after a hearing.

 a. *Court's February 1 Telephonic Conference*

On February 1, 2019, the Court held a telephonic conference with counsel for John and Dartmouth for the purpose of discussing the trial schedule. During the conference, counsel for John sought an expedited schedule. Counsel for Dartmouth opposed such a schedule. The Court stated that it was not inclined to order an expedited schedule where the parties were not in agreement, but that John could file a motion for expedited consideration. The Court further stated that if it were to grant such a motion, it would be inclined to do so only if the expedited schedule would allow for John to graduate on time at the conclusion of the Spring 2020 Term.[1] Counsel indicated that they would work together to determine whether John would be able to graduate on time if a trial were held on an expedited basis in May or June of 2019.

Following the telephonic conference, the parties conferred on the issue of whether it was possible for John to complete the remaining required courses for his Economics degree and graduate on time in Spring of 2020 if the case was tried on an expedited basis in May or June 2019. In the process of conferring on this issue, counsel for Dartmouth stated in an email that John "needs an additional 15 credits to graduate," and that "[i]f he is able to return to classes for Summer'19 term, there are 4 terms between now and his originally anticipated graduate date in

---

[1] This was an issue in which the Court also expressed interest during the hearing on John's PI Motion. See Exhibit A attached hereto (excerpt of transcript of hearing on PI Motion) at 319:2-20.

Spring 2020." Counsel for Dartmouth acknowledged that John "could get to 15 credits by taking 4 courses in 3 of those terms and 3 credits in the remaining term." Despite this acknowledgement, counsel for Dartmouth concluded that it "cannot be determined" at this time whether John could graduate on time because "[i]t is not necessarily the case that every course [John] needs would be available at the time he would need to take it."

  b. *John's Remaining Graduation Requirements at Dartmouth*

Prior to his expulsion at the conclusion of the Fall 2018 Term, John was enrolled in Dartmouth's Economics program. The combined undergraduate and Economics program requirements result in the following course requirements for John's degree[2]:

  A. John needs 35 credits to graduate;

  B. First-Year requirements included a writing requirement and a First-Year Seminar;

  C. Must complete through Level 3 of a language by the end of his 7th term;

  D. Distributive Requirement: one course in each of eight categories;

  E. World Culture Requirement: one course in each of three categories;

  F. Economics prerequisites: Economics 1, Economics 10, and Mathematics 3;

  G. Economics "Requirement I": Economics 20, Economics 21, and Economics 22;

  H. Economics "Requirement II": Must take two sequences consisting of two to three courses, out of 23 possible sequences, with one sequence ending in a "culminating experience";

  I. Economics "Requirement III": Must take a total of six courses numbered above 10 – depending on which sequences taken in Requirement II, may need to take one or two additional economics courses.

The following chart illustrates which requirements John has completed and which he has yet to complete. For those requirements that have not been completed, John's preferred method

---

[2] Attached hereto as Exhibits B and C are an undergraduate degree requirements presentation given to the Class of 2020 and an Economics Major Worksheet. These two documents set forth the requirements John must fulfill to complete and obtain his Economics degree.

and timeline for completion – assuming a return to Dartmouth for the Summer 2019 Term – are provided in **bold**:

| Requirement | Completed? | John's <u>preferred</u> plan for completion |
|---|---|---|
| 35 credits | No; John has completed 20 credits | **Take 4 credits in three terms and 3 credits in one term** |
| First-Year writing requirement and Seminar | Yes | |
| Language requirement | Yes | |
| Distributive Requirement | No; John has two remaining courses | **Take the two remaining courses during the remaining terms** |
| World Culture Requirement | No; John has one remaining course | **Take the one remaining course during the remaining terms** |
| Economic Prerequisites | Yes | |
| Economics Requirement I | No; John still needs to take Economics 20 | **Take Economics 20 during the Summer 2019 Term** |
| Economics Requirement II | No; John still needs to take two sequences, one of which must include a culminating experience | **Take sequences 26-36-46 (which includes a culminating experience) and 29-39; Economics 26 is offered during the Summer 2019 Term** |
| Economics Requirement III | Yes | |

As counsel for Dartmouth has pointed out, the course schedules for terms following the Summer 2019 Term have not been established. However, it is unreasonable to conclude merely from the absence of course schedules that John will not be able to complete his degree on time if he were able to return for the Summer 2019 Term. By the time the Summer 2019 Term comes,

John will have missed two terms in a row, but this does not necessarily set him farther back than other students in his class, since Dartmouth's D-Plan term system permits students significant flexibility to be off campus during multiple terms, especially during their third year.[3] Therefore, John is in no different position with respect to scheduling than a student who has voluntarily taken two semesters off campus and is returning Summer 2019 with the intention of graduating in Spring 2020. It would be unreasonable for Dartmouth to take the position that it is "uncertain" whether those students would be able to complete their remaining degree requirements on time to graduate with their classmates at the end of the Spring 2020 Term.

Furthermore, if John were reinstated for the Summer 2019 Term and discovered that the courses being offered in his senior year would not allow him to complete the degree requirements <u>in the manner in which he would prefer</u> – i.e. by taking his preferred sequences and Economics courses – he would simply take whatever courses were offered that would permit him to complete the degree requirements. Dartmouth's current position is based on the uncertainty surrounding whether John's specific preferred courses will be offered; certainly Dartmouth does not take the unreasonable position that so few Economics courses will be offered in the 2019-2020 academic year that John – or a similarly-situated student – could not cobble together <u>any</u> set of courses over three terms to satisfy the remaining requirements.

---

[3] Dartmouth utilizes a unique term scheduling system for its undergraduate programs called the "D-Plan." Under the D-Plan, "Dartmouth offers four 10-week terms per year," Fall, Winter, Spring and Summer. "A Flexible Study Plan," Dartmouth.edu, https://home.dartmouth.edu/education/undergraduate-experience/flexible-study-plan. "[W]ithin some guidelines, you choose which 12 terms to enroll" to constitute their undergraduate programs. <u>Id.</u> In their first year, students are required to enroll in the Fall, Winter, and Spring terms, and may choose to enroll in the Summer term. In their Sophomore year, students are required to enroll in the Summer term ("Sophomore Summer"), and may enroll in as many or as few of the other three terms as they wish. In their Junior year, students have full freedom for all four terms. Finally, students' Senior year is identical to their first year.

Accordingly, John maintains that in the event he prevails at trial and is able to return to Dartmouth for the Summer 2019 Term,[4] it would be possible for him to complete his degree and graduate on time at the end of the Spring 2020 Term.

## II. Legal Discussion

### a. Good Cause Exists for Expedited Consideration of This Case

"[T]he court shall expedite the consideration of any action . . . if good cause therefor is shown." 28 U.S.C. § 1657(a). "'[G]ood cause' is shown if a right under . . . a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." Id. In its August 31, 1984 Committee Report, the House Judiciary Committee stated the following regarding the "good cause" standard:

> The "good cause" standard could properly come into play, for example, in a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value[,] in a case in which failure to expedite would result in extraordinary hardship to a litigant, or actions where the public interest in enforcement of the statute is particularly strong.

H.R. REP. 98-985, 6, 1984 U.S.C.C.A.N. 5779, 5784.

John's action against Dartmouth alleges that Dartmouth violated his "right under a Federal statute" – i.e., his right to be free from discrimination in his pursuit of higher education as guaranteed under Title IX of the Education Amendments Act of 1972. The "factual context" of that claim, and John's other claims, is familiar to the Court and demonstrates that John is likely to suffer irreparable harm in the absence of expedited relief.

---

[4] The Summer 2019 Term begins on June 20, 2019. The Court's current open trial date of June 18 would very likely result in a trial that stretches one or two weeks beyond the start of the Term. Nonetheless, John maintains that his absence from classes for the first two weeks of the Term would not completely hinder his ability to complete the courses in that Term successfully (see TRO Motion), provided the Court orders Dartmouth to enroll John retroactively for the Summer 2019 Term and to ensure that his absence prior to his enrollment is not held against him.

One purpose of the requested injunction is to allow John to resume his education at Dartmouth and continue his studies without further interruption or effect on his ability to graduate on time at the end of the Spring 2020 Term. If John is deprived of the ability to complete his degree on time and graduate with the Class of 2020 next spring, then the requested relief will have been deprived of much of its value, as the Court recognized during the hearing on the PI Motion. See Exhibit A at 318:12-319:20 ("If John doesn't get this injunction and decides he wants to try to finish at Dartmouth, can he graduate on time without taking, you known, an unbelievably burdensome course load in many terms? . . . But I am curious about whether he . . . can finish school on time, both with respect to, A, this injunction and, B, with respect to when I schedule this trial because we may be putting it on a faster track than anybody really wants to. Because if I don't grant the injunction, I would like to at least give an answer to these parties that might enable John Doe to graduate from the school that accepted him as a freshman if a jury finds that Dartmouth -- just as it found in this court against Phillips Exeter not that long ago -- that it violated a breach of contract. . . . if there's going to be a trial here, it probably ought to be scheduled on a track that gets it resolved in a way that allows him to graduate on time.").

Furthermore, in addition to John's inability to graduate on time, the failure to provide expedited consideration of this case will only exacerbate the irreparable harm John has suffered and will continue to suffer as a result of his expulsion from Dartmouth, including the harms outlined in his PI Motion and Memo and TRO Motion. Notably, the delayed resolution of this matter will likely prejudice John's ability to transfer to another school in time for the upcoming fall semester, thereby further delaying his completion of a degree, and could result in his inability to return to a collegiate hockey program – at Dartmouth or elsewhere – in time to play during the upcoming 2019-2020 season, thereby depriving him of his fourth and final year of

NCAA eligibility. If trial is held in the fall of this year – as Dartmouth urges – and John ultimately prevails on his claims, he will have been irreparably harmed by his absence from Dartmouth since the beginning of the year, in terms of his education, his collegiate athletic career, and the impact of a gap in education on his future professional career opportunities.

Section 1657(a) requires expedited consideration where the "factual context . . . indicates that a request for expedited consideration has merit." The use of "merit" in this provision does not require John to prove a substantial likelihood of success on the merits of his claim. Rather, the use of "merit" in the statute's definition of "good cause" is simply intended "to emphasize the type of factual inquiry which the court should make" in order to "preclude **clearly frivolous** lawsuits from being granted expedited treatment." H.R. REP. 98-985, 5, 1984 U.S.C.C.A.N. 5779, 5783 (emphasis added). See also Ferguson v. F.B.I., 722 F. Supp. 1137, 1144 (S.D.N.Y. 1989) (holding that plaintiff's claim under Freedom of Information Act had sufficient "merit" for expedited relief because it was not "frivolous").

John maintains that his claims all have merit. During the hearing on the PI Motion, the Court expressed its belief that John's breach of contract and violation of Title IX claims were meritorious enough to survive a motion to dismiss, even if it ultimately found that John failed to provide a substantial likelihood of success to sustain his PI Motion. See Exhibit A at 319:14-17 (regarding the breach of contract claim: "I don't view this as a strong case for the plaintiff. . . . But I also -- it's not something you're going to get rid of on . . . 12(b). They've stated a claim . . . ."); Exhibit D attached hereto, excerpt of transcript of hearing on PI Motion, at 332:6-12 (regarding the Title IX claim: "And, frankly, that's one of the reasons why, honestly, this case probably -- I don't want to prejudge anything, I have an open mind if the motion's filed -- but I think this case likely survives 12(b) scrutiny. I don't think it gets dismissed on the complaint.").

Accordingly, John's claims are sufficiently meritorious to require expedited consideration under the circumstances of this case.

### b. The Court Has Inherent Authority to Manage Its Docket, Including by Expediting Cases

In addition to having specific statutory authority, if not a mandate, under §1657 to expedite John's case, the Court also has inherent authority to do so incident to its authority to manage its docket. See Clinton v. Jones, 520 U.S. 681, 706–07 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); Landis v. N. Am. Co., 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); In re Atl. Pipe Corp., 304 F.3d 135, 143 (1st Cir. 2002) ("Even apart from positive law, district courts have substantial inherent power to manage and control their calendars."); Jones v. Winnepesaukee Realty, 990 F.2d 1, 5 (1st Cir. 1993) ("Trial judges enjoy great latitude in carrying out case-management functions."); Wakefield v. Glob. Fin. Private Capital, LLC, No. 15CV0451 JM(JMA), 2015 WL 12699870, at *3 (S.D. Cal. Sept. 17, 2015) (holding that Fed. R. Civ. P. 16 "allow[s] district courts considerable discretion in managing their dockets and determining case management orders").

The Court's inherent authority to manage its docket includes the authority to expedite its consideration of cases, even absent agreement of the parties. See Donets v. Walton, No. CIV.05-2899 RHK/RLE, 2006 WL 980818, at *1 (D. Minn. Apr. 11, 2006) (granting petitioner's motion to expedite based, in part, on the court's "great latitude in carrying out case-management functions").

Therefore, it is within the Court's inherent power to schedule this matter on an expedited basis to ensure that any relief granted in the event John is successful at trial will not be moot, ineffective, or devoid of much of its value.

**Request for Relief**

WHEREFORE, John Doe respectfully requests that this Court:

A.　Grant John's Motion for Expedited Consideration;

B.　Expedite consideration of this matter by scheduling trial to begin on May 7, 2019 or June 18, 2019 and setting an expedited discovery and dispositive motion schedule accordingly; and

C.　Award any such further relief as the Court deems just and proper.

                              Respectfully submitted,

Date: February 13, 2019　　　　　　　　　　/s/ William E. Christie
　　　　　　　　　　　　　　　　　　　　WILLIAM E. CHRISTIE
　　　　　　　　　　　　　　　　　　　　NH Bar #11255
　　　　　　　　　　　　　　　　　　　　S. AMY SPENCER
　　　　　　　　　　　　　　　　　　　　NH Bar #266617
　　　　　　　　　　　　　　　　　　　　ALEXANDER W. CAMPBELL
　　　　　　　　　　　　　　　　　　　　NH Bar #268958
　　　　　　　　　　　　　　　　　　　　SHAHEEN & GORDON, P.A.
　　　　　　　　　　　　　　　　　　　　107 Storrs Street
　　　　　　　　　　　　　　　　　　　　Concord NH 03302
　　　　　　　　　　　　　　　　　　　　(603) 225-7262
　　　　　　　　　　　　　　　　　　　　wchristie@shaheengordon.com
　　　　　　　　　　　　　　　　　　　　saspencer@shaheengordon.com
　　　　　　　　　　　　　　　　　　　　acampbell@shaheengordon.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for plaintiff John Doe*

## CERTIFICATE OF SERVICE

      I, William E. Christie, hereby certify that a copy of the foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

      */s/ William E. Christie*
      William E. Christie