UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JOHN DOE,<br><br>        Plaintiff,<br><br>v.<br><br>TRUSTEES OF DARTMOUTH COLLEGE,<br><br>        Defendant. | Civil Action No. 19-CV-00013-JL |

**SALLY SMITH'S MOTION TO QUASH JOHN DOE'S SUBPOENA AND MEMORANDUM IN SUPPORT**

Interested third-party, Sally Smith[1] moves this Court quash or modify the Plaintiff John Doe's subpoena to depose Smith, on the basis that it imposes an undue burden. *See* Fed. R. Civ. P. (d)(3)(iv).[2] Movant incorporates the attached Memorandum of Law in support of the Motion.

WHEREFORE, Ms. Smith respectfully requests that this Court:

1. Quash the Plaintiff's Subpoena to Depose Sally Smith;

2. Alternatively, modifies the Plaintiff's Subpoena to Depose Sally Smith; and

3. Grant such further and other relief as deemed necessary by the Court.

Date: February 21, 2020

---

[1] The interested third party is referred to as "Sally Smith" by Doe in his Complaint to protect her identity and therefore, this nomenclature is used throughout this motion and memorandum.

[2] On February 20, 2021, Smith filed a Motion to Intervene for the purpose of filing this motion. The Court has not yet ruled upon that motion, however Doe's counsel insisted that this motion be filed today nonetheless. Counsel for Smith raised her concerns regarding filing this motion prior to the Court's ruling on the motion to intervene and was met with threats by Doe's counsel to serve another subpoena on Smith and schedule a deposition without her consultation, on his timeline. As a result, Smith is forced to file this motion at this time to avoid Doe moving forward with his threats.

1

**RESPECTFULLY SUBMITTED,**

**SALLY SMITH,**

By Her Attorney,

/s/ Kimberly A. Dougherty
Kimberly A. Dougherty, Esq.
ANDRUS WAGSTAFF, P.C.
19 Belmont Street
South Easton, MA 02375
Telephone: (508) 230-2700
Facsimile: (303) 376-6361
kim.dougherty@andruswagstaff.com

## **MEMORANDUM IN SUPPORT SMITH'S MOTION TO QUASH DOE'S SUBPOENA**

### I. INTRODUCTION

The Court should quash Does' deposition subpoena of Sally Smith in accordance with Fed.R.Civ.P. Rule 45(d)(3)(A). First, there would be no benefit to Ms. Smith's deposition because she has little knowledge of facts related to whether Dartmouth breached its contract with Doe by allegedly failing to appropriately investigate and deliberate the Title IX claim.[3] Second, the information sought from the deposition would be entirely duplicative of the extensive discovery already produced by her and Dartmouth in this litigation and during the Title IX administrative process. Third, forcing Ms. Smith to be questioned about the Title IX investigation will only re-traumatize her and trigger extreme emotional distress that is not appropriate or necessary to deliberating Doe's claims against Dartmouth. Further, Ms. Smith's status a nonparty amplifies this burden and the fact that the need for the discovery does not outweigh the burden on her.

As set forth herein, the motion to quash should be granted because Doe is unable to demonstrate the need to depose Sally Smith outweighs the burden upon her as required by Fed.R.Civ.P. Rule 45(d)(3)(A). Alternatively, the subpoena should be limited in its scope solely to the Title IX investigation process and not the underlying assault.

### II. RELEVANT BACKGROUND

On January 7, 2019, John Doe filed a Complaint (Doc. 1) against the Trustees of Dartmouth College alleging breach of contract, among other claims, based upon Dartmouth's investigation and decision to expel Doe for finding Ms. Smith's allegations that he sexually assaulted her meritorious. Despite the fact that the case between Doe and Dartmouth has little to

---

[3] Notably, it's Smith's position that Dartmouth's investigation and deliberation of the Title IX claim involved deliberate indifference towards *her*, not Doe.

3

do with Ms. Smith, she has cooperated and provided voluminous discovery to Doe and the prior Dartmouth investigator (which is in Doe's possession), including, but not limited to:

- Text messages;

- Emails;

- Correspondence with Dartmouth officials related to the Title XI investigation, including, but not limited to communications concerning the investigation, finding, sanctioning process and appeal process conducted by Dartmouth College;

- Correspondence with Hanover Police Department including, but not limited to documents and communications concerning any complaint to and investigation by the Hanover Police;

- Correspondence with Investigator Sara Hellstedt and/or any agent of Bernstein Shur concerning the allegations made against John Doe by you, including but not limited to all communications concerning the investigation, finding, sanctioning process and appeal process conducted by Dartmouth College and this lawsuit;

- Documents with Hanover Police Department concerning the allegations made against John Doe by Ms. Smith, including but not limited to all communications concerning the investigation and forensic evidence;

- Multiple Interviews of Ms. Smith conducted by Dartmouth and the Hanover Police Department;

- A Statement in response to the Title IX report findings; and

- An over 600-page Title XI investigation report.

Moreover, Dartmouth has produced all requested documents and email correspondence in its possession and maintained in Ms. Smith's Dartmouth email account. A deposition of Ms. Smith would only result in unnecessary, duplicative discovery that would traumatize Ms. Smith.

### III.   LEGAL STANDARD

A court must, on timely motion, quash or modify a subpoena if the subpoena (1) does not allow reasonable time to comply, (2) requires a person to comply with a subpoena beyond the geographic limits set under Federal Rule of Civil Procedure 45(c), (3) requires disclosing privileged or protected material and no exception or waiver applies, or (4) subjects a person to

4

undue burden. Fed. R. Civ. P. 45(d)(3)(A). To determine undue burden, courts employ a balancing test – weighing the burden to Smith against the Doe's need for, and the relevance of, the information sought. Sourgoutsis v. United States Capitol Police, 323 F.R.D. 100, 115 (D.D.C. 2017). Moreover, Discovery "is not boundless, and a court may place limits on discovery demands that are 'unreasonably cumulative or duplicative.'" Burns v. Bank of Am., 2007 WL 1589437 (S.D.N.Y. June 4, 2007), at *3 (quoting Fed.R.Civ.P. 26(b)(2)(C)).

### IV. THE COURT SHOULD QUASH DOE'S DEPOSITION SUBPOENA TO SMITH AND NOT FORCE HER TO BE UNECESSARILY AND REPEATEDLY TRAUMATIZED

Under the balancing test required by Fed. R. Civ. P. 45(d)(3)(A), the limited, if any, value of a deposition does not outweigh the severe burden and inevitable devastating distress that will be cast upon third-party Smith, especially where the information is already in Doe's possession or readily available elsewhere. The Court should allow Ms. Smith's motion to quash.

#### A. Sally Smith has no Information Related to the Doe's claims against Dartmouth, and what Limited, Relevant Information She May Have has Already been Provided to Doe or Is Readily Available Elsewhere.

A deposition of Ms. Smith carries little, if any, probative value because Ms. Smith does not know how Dartmouth conducted its Title XI investigation or how Dartmouth breached its alleged contract with Doe. See Town of Wolfeboro v. Wright-Pierce, No. 12-CV-130-JD, 2014 WL 1713508, at *2 (D.N.H. Apr. 30, 2014). Importantly, any potentially relevant information in that could be gained from Ms. Smith has already been made available to the litigants through voluminous discovery produced by her and Dartmouth, the multiple prior interviews of Ms. Smith and the over 600 page investigative report. See id.

It is well established that where a third-party witness has limited, relevant information and when the information is duplicative or readily available elsewhere, Courts will not burden

5

the third-party with a deposition. New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. 13-md-02419, 2013 WL 6058483, at *7 (D. Mass. Nov. 13, 2013); Wolfeboro, 2014 WL 1713508. Indeed, if the potential deponent does not have "personal knowledge of the relevant topics," or would provided limited additional benefit to the record already developed, courts will deem it "unreasonably cumulative" and quash the subpoena. Sourgoutsis v. United States Capitol Police, 323 F.R.D. 100, 115-116 (D.D.C. 2017).

In Wolfeboro, there was a breach of contract dispute between a town and public contractor and this Court quashed the Defendant contractor's subpoena seeking testimony from a nonparty New Hampshire Department of Environmental Services (NHDES) employee because it was irrelevant to the disputed issues and duplicative. Wolfeboro, 2014 WL 1713508, at *2. In that case, the nonparty NHDES employee had a supervisory role over the work site at the center of the breach of contract dispute. Id. The employee even wrote letters and attended meetings regarding the site. Id.  However, this Court determined 1) the employee possessed little relevant knowledge related to the contract dispute and 2) relevant information was more readily available through employee affidavits and from other NDES witnesses with more knowledge of the contract dispute. See id.

Doe alleges Dartmouth conducted a biased and unfair investigation that violated his rights under Title XI and resulted contractual and tortious damages. (Compl. at ¶ 204-24.). However, like Wolfeboro, Smith has little knowledge of how Dartmouth conducted its Title IX investigation. See 2014 WL 1713508, at *2.  After she reported the alleged assault to Dartmouth officials, the Title XI investigation was out of her hands. Smith's involvement with the investigation was confined to information already provided to Doe, including providing interviews, documents and statements to Dartmouth, offering a few witnesses to the independent

investigator (interviews of witnesses were provided to Doe), receiving of occasional updates on the status of investigation from Dartmouth officials, and sending a letter to Dartmouth Office of Judicial Affairs expressing her support for suspending the Plaintiff from campus pending the Dartmouth Committee on Standards' decision. All such information is already in Doe's possession. How the investigator evaluated that information, and if it was done appropriately has nothing to do with Ms. Smith.

Indeed, Courts have routinely recognized that if "material sought by subpoena is readily available" to a party in the action, as it is here, then "obtaining it through subpoena on a nonparty often will create an undue burden." New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. 13-md-02419, 2013 WL 6058483, at *7 (D. Mass. Nov. 13, 2013) (quoting Gray v. Town of Easton, No. 3:12-cv-00166, 2013 WL 2358599, at *3 (D. Conn. May 29, 2013)). To date, Ms. Smith has cooperated with both litigants' discovery requests and has produced hundreds of pages of material that exhaustively covers her limited knowledge of Dartmouth's investigation and more - so too has Dartmouth.

Moreover, the accessibility of Dartmouth witnesses – a party to this litigation - lowers the probative value of third-party Smith's deposition, particularly where she has no information related to the claims. Wolfeboro, 2014 WL 1713508, at *2. Despite the abundance of available information already provided to Doe by Ms. Smith and Dartmouth —like the Wolfeboro Defendant — continues to press for a deposition. 2014 WL 1713508, at *2-3. Doe cannot meet its burden to establish that the significant, severe trauma that a deposition will have on Ms. Smith outweighs the value of what would be discovered and therefore, this motion should be granted.

**B.  Requiring Ms. Smith to be Questioned by Doe's Counsel and Dartmouth will have Devastating Effects, Triggering Severe Emotional Distress, Resulting in Undue Burden to her as a Nonparty that is not Outweighed by any Need of Doe's.**

The probative value of Ms. Smith's deposition, if any, is utterly outweighed by the devastating emotional distress and triggering that she will experience as a result of the questioning. The scientific literature on sexual assault victims concludes that they often continue to experience emotional distress years after the encounter. The emotional distress leads to mental illness and manifest physiological symptoms.[4] It has been reported that sexual assault victims experience post-traumatic stress disorder at significantly higher rate than the general population.[5]

Ms. Smith still harbors significant, residual trauma from her encounter with Doe, as established by her continuous need for regular counseling and in her statements to Dartmouth officials that are in Doe's possession. As Doe well knows from review of her statement, during the Dartmouth's investigation Ms. Smith recounted the distress she feels every night between 1 and 3 am—the time of the sexual assault:

> "Every single night at 1:43 and 3:36 a wave of stress and fear wash over me. I feel like I have to run, like I am spurred on by a sense of danger that is constantly overshadowing my whole life. Even on nights that I am exhausted, I wake up by 1:30 and know that it must be getting nearer to the time. I remember the nights on campus. I would just walk around at 3 AM. It wasn't my space anymore. I would just leave and walk around. If I tried to go into bed, I would shake."

It should go without saying that Doe's lawsuit with Dartmouth, which has been publicized in the news and the Dartmouth College newspaper, has been very distressing and emotionally taxing on Ms. Smith. The psychological and emotional impact of re-victimization through the legal system has long been understood and recognized in the psychology

---

[4] *See* https://www.rainn.org/effects-sexual-violence;
[5] Id.

8

community.[6] Requiring Ms. Smith to sit through a deposition will only exacerbate the emotional distress that she is experiencing as a direct result of this lawsuit. Thus, if Doe and Dartmouth's counsel are allowed to question her for hours with the already stated intent by Doe to impeach her credibility, it will cause Smith to an experience another episode of devastating, traumatic stress with severe, adverse consequences for her mental and physical health. Under a balancing test, it is clear that it is not worth the benefit of a deposition of this third-party where the information is in Doe's possession or readily available elsewhere. Ms. Smith's motion must be allowed.

**C.    Should Any Deposition go Forward, it Must be Limited in Scope to Minimize the Burden upon Ms. Smith.**

"Where a party has subpoenaed a non-party, '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" Crosby v. City of New York, 269 F.R.D. 267, 282 (S.D.N.Y.2010) (quoting Kingsway Fin. Serv., Inc., 2008 WL 4452134, at *4); Koch v. Greenberg, No. 07 Civ. 9600(BSJ)(DF), 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) ("Subpoenas issued under Rule 45 are subject to Rule 26(b)(1)'s overriding relevance requirement."). Doe is not exempt from this burden. Should the Court find some grounds to fine the need for the deposition of Ms. Smith is outweighed by the burden and trauma she will suffer, the deposition must be limited in scope solely to the claims in this case related to Dartmouth's Title IX investigation.

In the meet and confer conducted prior to this filing, Doe's counsel has indicated that he intends to question Ms. Smith about her statements regarding consent and the sexual encounter

---

[6] *See e.g. Psychological Effects of Victimization: Implications for the Criminal Justice System* (1987) at https://journals.sagepub.com/doi/abs/10.1177/0011128787033004004.

between herself and Doe, which are irrelevant to a case fundamentally about Dartmouth's conduct and only made to cause her distress. Counsel also indicated that he intended to question her related to her interactions with Hanover Police Department, again, a topic entirely irrelevant to Doe's claims that Dartmouth failed to conduct an appropriate Title IX investigation. In addition, Counsel claims generally that he will ask questions that seek to attack her credibility – a wholly inappropriate line of question in a claim where the investigator and Dartmouth were at fault for failing to conduct an appropriate Title IX investigation. This is not the time or place to litigate what happened in the bedroom, and to try and blame the survivor for Doe's misconduct. Any such line of questions must be completely prohibited by this Court.

For the reasons stated above, if the Court upholds the Doe's deposition subpoena, then it should be limited solely to questioning regarding the Title XI investigation process and not the underlying assault.

## V. CONCLUSION

For the reasons stated above, the Court should quash Doe's subpoena for a deposition of Ms. Smith.

Respectfully Submitted,
Sally Smith,
By her Attorney,


/s/ Kimberly A. Dougherty
Kimberly A. Dougherty Esq. (BBO #658014),
*admitted pro hac vice*
ANDRUS WAGSTAFF, PC
19 Belmont Street
South Easton, MA  02375
(508) 230-2700
Kim.dougherty@andruswagstaff.com

10

## CERTIFICATE OF SERVICE

I certify that on February 21, 2019, I caused the foregoing document to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system:

| | |
|---|---|
| William E. Christie<br>S. Amy Spencer<br>Alexander William Campbell<br>Shaheen & Gordon<br>107 Storrs St.<br>PO Box 2703<br>Concord, NH 03302-2703<br><br>*For Plaintiff* | Daryl J. Lapp (admitted pro hac vice)<br>Elizabeth H. Kelly (admitted pro hac vice)<br>Katherine A. Guarino (N.H. #264846)<br>LOCKE LORD LLP<br>111 Huntington Avenue<br>Boston, MA 02199<br>(617) 239-0100 telephone<br>(617) 227-4420 facsimile<br>daryl.lapp@lockelord.com<br>liz.kelly@lockelord.com<br>katherine.guarino@lockelord.com<br><br>*For Defendant* |

/s/ Kimberly A. Dougherty
Kimberly A. Dougherty