UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Doe

    v.                                                                         Civil No. 19-cv-013-JL

Trustees of Dartmouth College

# **ORDER**

In this contract-related case between an expelled student and Dartmouth College, intervenor Sally Smith[1] moves to quash or modify the deposition subpoena, see Fed. R. Civ. P. 45(d)(3)(A)(iv), served by plaintiff John Doe. Doe has sued Dartmouth for breach of contract arising from its investigation into an encounter between him and Smith (alleged by Smith, and found by Dartmouth, to have been a sexual assault) under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., and the sanctions levied against him resulting from that investigation. He seeks to depose Smith on a number of topics relating to the encounter, her actions following the encounter, and her communications with Dartmouth and the Hanover Police Department. After carefully considering the parties' memoranda,[2] the court grants Smith's motion in part and denies it

---

[1] The court has permitted the plaintiff to proceed pseudonymously in this action and, likewise, to refer to Sally Smith by a pseudonym.

[2] The court customarily holds oral argument on all significant motions and would, in the usual course, hold oral argument on this motion. But the parties seek expedited treatment of this motion and, as the court is presently presiding over a trial in another District, it could not both rule expeditiously and hold oral argument. In light of this and the fact that neither Smith nor Doe requested oral argument, the court rules on this motion based on the parties' submissions.

in part. Specifically, the court declines to quash the subpoena entirely, concluding that Smith possesses evidence relevant to Doe's breach-of-contract claims against Dartmouth into which he is entitled to obtain discovery. At the same time, several of the topics on which Doe seeks testimony from Smith lack relevance to those claims and would impose on her an undue burden, especially to the extent that Doe seeks to relitigate Dartmouth's Title IX investigation.

**Legal standard.** As a general matter, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," taking into account certain considerations. Fed. R. Civ. P. 26(b)(1). "A subpoena duces tecum issued to a non-party, pursuant to Fed. R. Civ. P. 45, is subject to the 'relevance' requirement of Fed. R. Civ. P. 26(b)(1)," such that "courts must 'balance the burden of proposed discovery against the likely benefit.'" Holloman v. Clarke, 320 F.R.D. 102, 103 (D. Mass. 2017) (Gorton, J.) (quoting Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 400 (1st Cir. 2005)). It is thus "within the court's discretion to quash a subpoena where the testimony or information sought is irrelevant." Town of Wolfeboro v. Wright-Pierce, No. 12-CV-130-JD, 2014 WL 1713508, at *1 (D.N.H. Apr. 30, 2014) (DiClerico, J.) (quoting Griffiths v. Ohio Farmers Ins. Co., 2010 WL 2639913, at *1 (N.D. Ohio June 29, 2010)).

The court also "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The party moving to quash the subpoena "bears the burden of showing that the subpoena imposes an undue burden, and it cannot rely on a mere assertion that compliance would be burdensome and onerous

without showing the manner and extent of the burden and the injurious consequences of insisting on compliance." Saucedo v. Gardner, No. 17-cv-183-LM, 2017 WL 10109878 at *3 (D.N.H. Oct. 27, 2017) (McCafferty, J.) (quoting In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., No. 13-2419-FDS, 2013 WL 6058483, at *6 (D. Mass. Nov. 13, 2013)).

**Background**. This case arose out of an encounter between Doe and Smith, which Smith reported to Dartmouth and the Hanover Police Department, and which ultimately led to a Title IX investigation, a finding of sexual misconduct committed by Doe, and Doe's expulsion from Dartmouth. Following his expulsion, Doe brought this lawsuit asserting one Title IX claim and two contract-related claims against Dartmouth. The court dismissed the Title IX claim under Rule 12(b)(6), but declined to dismiss the remaining counts, leaving Doe with claims that Dartmouth breached its contract with him and violated the implied covenant of good faith and fair dealing in its conduct of the Title IX investigation and its sanctions of Doe in light of that investigation.

Doe now seeks to depose Smith, contending that she possesses personal knowledge about issues relevant to his remaining claims. Specifically, Doe seeks to depose Smith on the following topics:

(1) "well-documented but unexplained inconsistencies in her own statements" to the Title IX investigator;

(2) "her complaint to Dartmouth's Title IX office regarding the alleged assault;"

(3) "her complaint to the Hanover Police regarding the alleged assault;"

(4) "the decision to obtain Plan B and photograph the box;"

3

(5) "the decision to wash her bedsheets and clothing after the alleged assault;"

(6) "the decision not to attend the scheduled SANE exam;"

(7) "the decision to provide incomplete text messages to the Dartmouth investigator;"

(8) "communications with agents of Dartmouth College and the Hanover Police regarding providing text messages to Dartmouth's investigator," Attorney Hellstedt'

(9) "the lobbying of Dartmouth not to obtain and of the Hanover Police not to disclose the results of forensic testing after Dartmouth paused its investigation to obtain those very results;"

(10) "her communications with Hellstedt, Dartmouth officials, the Hanover Police, and others;" and

(11) her incomplete document productions in this action.[3]

While some of these topics are, in fact, relevant to Doe's claims, many of them are not and, further, may impose an undue burden on Smith.

**Impermissible topics.** As an initial matter, some of the information that Doe seeks from Smith is not relevant to his contract-related claims against Dartmouth. Those claims concern whether actions by Dartmouth and its agents breached any agreement that existed between Doe and Dartmouth. And while the reasons that Dartmouth's agents took certain actions after receiving information from Smith may be relevant to those

---

[3] Obj. (doc. no. 63) at 4-5, 8-9.

4

claims, Smith's actions and motivations surrounding the encounter in question are not. But see infra n.11. Accordingly, the encounter between Smith and Doe, the events leading up to the encounter, and Smith's decisions immediately following that encounter – decisions to obtain a Plan B contraception product, wash her sheets and clothing, and not to attend a SANE medical exam – lack any relevance to Doe's breach of contract claims. The plaintiff may not depose her on those topics.

The same holds true of Smith's complaint to the Title IX office (including her decision to make a complaint and the contents thereof) and her allegedly inconsistent statements to the Title IX investigator. Doe's contract-based claims turn on how Dartmouth and the Title IX investigator treated, responded to, and investigated (or failed to investigate) the information that it received from Smith and Doe, not the bases for Smith's decisions to file a complaint or to provide the information that she did. In short, Doe may not attempt to conduct anew the Title IX investigation[4] by deposing Smith on the encounter between her and Doe, the actions she took immediately thereafter, or the content of the information that she provided to the Title IX investigator.

Doe contends that this information may be relevant to the dismissed Title IX claim. He asserts that "this Court expressly ruled Doe could explore [that claim] in discovery and reinstate as a claim if he were to uncover evidence of gender bias."[5] It is

---

[4] Though it may be "[p]art of Doe's theory of the case . . . that Smith has made a false allegation," Doe is correct in acknowledging that "this is not a forum to relitigate [the investigator's] ultimate finding . . . ." Obj. (doc. no. 63) at 10.

[5] Id. at 4 (citing Mot. to Dismiss Hrg. Tr. (doc. no. 49) at 76-77).

true that the court declined to "foreclos[e] discovery on the idea of gender bias by Dartmouth administrators."[6] In doing so, however, it merely acknowledged that "gender bias is fair game for discovery with respect to the [contract-based] claims that remain."[7] And, importantly here, it expressly cautioned Doe that it was not ruling that its dismissal of the Title IX claim was "just without prejudice and go investigate it anyway."[8] Based on the information that Doe seeks from Smith, it appears that Doe is arguably attempting to do just that. But because none of Smith's reasons for taking actions immediately following the encounter bear in any way on whether Dartmouth administrators exhibited gender bias, that discovery is outside the bounds of what the court stated during the hearing it would permit.

Smith has also demonstrated that revisiting the encounter or the decisions she took immediately thereafter – whether to wash the bedding and clothing, acquire Plan B, attend a SANE exam, or file a complaint with the Title IX office – would impose a psychological burden on her. Accordingly, in light of their low relevance to Doe's breach-of-contract claims, permitting questioning of Smith on these topics is also unnecessarily burdensome. See Fed. R. Civ. P. 45(d)(3)(A)(iv). While Doe has provided cases suggesting that complainants have been deposed in Title IX cases,[9] none of those

---

[6] Mot. to Dismiss Hrg. Tr. (doc. no. 49) at 76-77.

[7] Id.

[8] Id.

[9] See Obj. (doc. no. 63) at 7 (citing Haidak v. Univ. of Mass. at Amherst, 299 F. Supp. 3d 242, 252 n. 10 (D. Mass. 2018); Pacheco v. St. Mary's Univ., No. 15-CV-1131 (RCL), 2017 WL

cases indicates whether those complainants raised objections or any limitations in scope to which those depositions may (or may not) have been subject. Furthermore, the plaintiff in each of those cases retained a Title IX claim at the time of the depositions – a claim which depended, in part, on showing that the outcome of the investigation was erroneous. See Haidak, 299 F. Supp. 3d at 271 (granting summary judgment on Title IX claim); Pacheco, 2017 WL 2670758, at *18 (same); Ohio State Univ., 2016 WL 541289, at *1 (acknowledging Title IX claim). Doe, here, has no such active claim.

**Permissible topics**. Smith's involvement in this case was not limited, however, to the encounter, the actions she took immediately thereafter, her complaint to the Title IX office, or her participation in the Title IX investigation itself. Smith also filed a complaint with the Hanover Police Department and provided material for forensic testing. It appears that Smith, who Doe alleges had some form of a relationship with a Hanover police officer investigating her allegation, may have interfered with the Police Department providing that information to Dartmouth. She may, further, have communicated with both Dartmouth's agents and the Police Department about the text messages she provided to Dartmouth's Title IX investigator.

Doe alleges that Dartmouth breached its contract with him, at least in part, by failing to obtain results of the Hanover Police Department's investigation, including those forensic tests, before sanctioning him. Evidence regarding whether and to what extent

---

2670758, at *15 (W.D. Tex. June 20, 2017); Doe v. Ohio St. Univ., No. 2:15-CV-2830, 2016 WL 541289, at *1 (S.D. Ohio Feb. 11, 2016)).

7

Smith may have prevented Dartmouth from obtaining that information during the investigation is relevant to Doe's breach-of-contract claims. This includes Smith's testimony concerning her complaint to the Hanover Police Department[10] and her communications with members of that department and Dartmouth's agents. Those communications purportedly involve Smith providing text messages to the Title IX investigator and the Hanover Police Department providing the results of forensic testing to Dartmouth and the Title IX investigator. There are potentially reasonable and understandable explanations for all of Smith's conduct, consistent with her allegations and with Dartmouth's findings. But her deposition testimony on these topics is relevant to Doe's claims. That testimony could benefit either or both sides of this litigation.[11]

Smith also has not demonstrated that being deposed on these subjects would unduly burden her, other than arguing that Doe may obtain the relevant information from Dartmouth, instead, or through her document productions. But Smith is likely to have first-hand knowledge on these topics not possessed by Dartmouth or revealed by the documents she produced. Accordingly, neither Rule 26 nor Rule 45 precludes Doe from deposing Smith on these topics.

---

[10] Consistent with the court's rulings supra, the contents of this complaint should not be used to revisit the encounter between Doe and Smith.

[11] The court notes that Dartmouth has not joined the motion to quash or filed any views on the matter, perhaps in part because Smith's testimony might ultimately favor its position. The court additionally notes that some of the deposition inquiry precluded supra in this order as irrelevant is potentially more germane to Dartmouth's defense than it is to Smith's claims. Since Dartmouth has not advanced any such argument here, the court declines to explore that possibility further.

Finally, Smith has produced documents in this action. Doe has called into question the completeness of this production, which Smith has neither denied nor explained in her filing or any response to Doe's objection, nor requested oral argument to do so. Accordingly, Doe may question Smith on the completeness of those productions.

**Conclusion**. In summary, the court declines to quash the subpoena, but limits the permissible scope of Smith's deposition. Doe may inquire about Smith's relationship with the Hanover Police Department and its impact on Dartmouth's investigation, including the following topics:

- "her complaint to the Hanover Police regarding the alleged assault," but not in a manner to revisit the encounter complained of;

- "the decision to provide incomplete text messages to the Dartmouth investigator," insofar as she may have done so after consulting or in coordination with the Hanover Police Department;

- "communications with agents of Dartmouth College and the Hanover Police regarding providing text messages to Dartmouth's investigator;"

- "the lobbying of Dartmouth not to obtain and of the Hanover Police not to disclose the results of forensic testing after Dartmouth paused its investigation to obtain those very results;" and

- her allegedly incomplete document production in this action.[12]

---

[12] In a footnote in his objection, Doe "requests that this Court order Smith to comply with her discovery obligations in this case and produce all documents and communications responsive to John Doe's First Requests for Production of Documents to Sally Smith . . . ." Obj. (doc. no. 63) at 9. Because this request runs afoul of both this court's Order After Preliminary Pretrial Conference (doc. no. 47) (concerning motions to compel discovery responses) and Local Rule 7.1(a)(1) ("Objections to pending motions and affirmative motions for relief shall not be combined in one filing."), the court does not address it.

But questions on the encounter between Doe and Smith, Smith's actions immediately following the encounter, Smith's provision of information to the Title IX investigator, or any attempt to relitigate the Title IX investigation are off-limits, including the following topics:

- the allegedly "well-documented but unexplained inconsistencies in her own statements" to the Title IX investigator;
- "her complaint to Dartmouth's Title IX office regarding the alleged assault;"
- "the decision to obtain Plan B and photograph the box;"
- "the decision to wash her bedsheets and clothing after the alleged assault;" and,
- "the decision not to attend the scheduled SANE exam."

Finally, the parties indicate that Smith's deposition is to take place in California, and again, Smith has expressed concerns about its psychological impact on her. Should Smith be willing to travel to New Hampshire, however, the deposition may be held in this courthouse with the court personally in attendance to preside and supervise in order to ensure that the questioning remain respectful, appropriate, and not exceed the scope of this order.[13]

---

[13] In offering this accommodation, the court in no way intends to suggest any belief that Doe's counsel would engage in inappropriate behavior or intentionally exceed the limits the court has placed on this deposition.

10

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated: March 6, 2020

cc: Alexander William Campbell, Esaq.
Suzanne Amy Spencer, Esq.
William E. Christie, Esq.
Daryl J. Lapp, Esq.
Elizabeth H. Kelly, Esq.
John A. Houlihan, Esq.
Kimberly A. Dougherty, Esq.
Jaye Rancourt, Esq.